May it please the court. My name is Zach Tafoya and I, along with my colleague Ryan Killian, represent the appellant, Mr. Ricky Gonzales, in this matter. For the first six to seven minutes, I will be addressing the preclusion issues. For the subsequent six to seven minutes, my colleague will address those issues unaffected by preclusion, namely standing and Mr. Gonzales' motion for leave to amend, with the remainder of the time to be used on rebuttal. This court should adopt the reasoning given by the Tenth Circuit in Rhodes v. Hannigan and hold that the denial of a state habeas petition has only collateral estoppel effect and not res judicata effect on the subsequently filed federal section 1983 action. The Tenth Circuit came to this conclusion looking to state law, federal law, as well as policy. Would you please address our case in Brodheim? Yes, Your Honor. Didn't that hold that we have to give preclusive effect, as would a California court, and the California court would analyze the claim based on a primary rights analysis, the primary right here being Mr. Gonzales says, I shouldn't be in jail. The primary duty of the warden of the correction department is to keep him in jail only if it's according to law, and that would be the breach. Isn't that exactly the basis upon which we decided implicitly in Brodheim that primary rights analysis to preclusion for state habeas applied in federal habeas? Your Honor, this court in Brodheim v. Crye indeed did make the decision that primary rights analysis, rightly so, must apply when res judicata can apply. However, as made clear in our motion to certify, Union v. Caruso, a California case, established that while orders granting a writ of habeas corpus are res judicata, orders denying the writ are not. And thus the underlying question of whether or not an order based on a habeas petition... ...instead of taking an appeal from that, you have to file another writ of habeas corpus on the next level up, right? Yes, Your Honor. But here we have the Del Norte Superior Court making a reasoned determination that Mr. Gonzalez was found to have two or three letters detailing gang activities in his cell. He had two illustrations of a gang freedom bird in his cell, and he had a card from Mr. Luton, a validated individual, in his cell. Now, that was a reasoned basis for the Del Norte denial of writ of habeas corpus. Why doesn't that fall within preclusion law here? Well, Your Honor, the reason it doesn't fall within preclusion is due to the fact that under California's primary rights, there are different primary rights implicated in the instant case than those necessarily litigated in the habeas petition by the Del Norte Superior Court. Which is what we decided in Brodheim. There are different rights. Precisely right, Your Honor. And it's Brodheim v. Cryer that actually clarifies why different primary rights are implicated, specifically with regard to Mr. Gonzalez's retaliation claim. Now, we say different rights because, on the one hand, Gonzalez says, I shouldn't be here in jail at all, pardon me, in SHU at all because I'm not a gang member. And he says it's quite a different right that in order to get out of jail, this regulation, whether I am a member or whether I'm not a member, I have to put a snitch jacket on. Well, that is with regard to... In the vernacular of the Hall of Justice, right? Sure, sure. And it seems, Your Honor, that you're referring to his claim, his Eighth Amendment claim regarding the debriefing process. Which, as the district court noted, is unaffected by res judicata. However, the district court erroneously determined that res judicata served to bar Mr. Gonzalez's retaliation claim. Which essentially alleges that the very initiation by an individual officer of the investigation of this gang association was based in retaliatory motives for Mr. Gonzalez's refusal to forego his right to medical treatment. This, as clarified in Brodheim v. Crye, is a chilling effect of Mr. Gonzalez's substantive constitutional rights as opposed to the procedural harm that he allegedly endured through the lack of due process. As this was adjudicated in the habeas court, the lack of due process is barred by collateral estoppel. However, this chilling effect through the retaliatory motivations of the officer should not be precluded. Moreover, Your Honor, looking to the equal protection claims that Mr. Gonzalez is alleging in the instant action, it is clear that this alleges discrimination within the Pelican Bay State Penitentiary. This is not looking to evidence underlying his validation, but looking to a policy and regulation that's implemented there in the prison that effectively discriminates against those of Hispanic origin. This is entirely separate and stemming from a primary right to be free from such discrimination, not the primary right to be free from placement in the SHU absent procedural process. These distinctions should lead this court to reverse the finding that race judicata applies. Wait a minute, but is this claim that there are injuries to him from discrimination other than being put in SHU? Mr. Gonzalez has alleged, Your Honor, that the discrimination that is in effect at the State Penitentiary creates a presumption of gang association merely by associating with one's own race, as well as a lower standard. Now, this policy in and of itself... Well, but his claim of discrimination is not that he's called epithets, which are racially discriminatory. His claim is they use racial discrimination to put me in SHU, right? Essentially, that is the harm that it leads to. But if the primary right was I shouldn't be in SHU to begin with, why, if race judicata applies, could he not have brought that into state habeas? He could have, Your Honor. However, the fact that 1983 claims allow for the assertion of damage claims, the effectiveness of those claims would have been different. Your Honor, I see that seven minutes has expired, and if I may, I'd like to retire and allow my colleague to address standing. Thank you, Brian. You may do so, counsel. Thank you. May it please the Court. The trial court erred... Counsel, would you identify yourself for the record, please? I'm Ryan Killian, with the Pepperdine Appellate Advocacy Clinic. I'm sorry, I didn't hear the name. Ryan Killian. Ryan Killian. Thank you, Mr. Killian. The trial court erred in ruling that Mr. Gonzalez lacked standing to challenge the constitutionality of the debriefing system he must navigate to secure freedom from the SHU. Under the trial court's approach, Mr. Gonzalez would have to subject himself to the risk of death... Your voice is rather low. Would you kind of project a little bit more? Yes, Your Honor. Under the trial court's approach, Mr. Gonzalez would have to subject himself to the risk of death just to have standing to challenge the debriefing system that he is subjected to as an adjudicated gang member. The government and the trial court cite one case for the proposition that Mr. Gonzalez lacked standing, Powers v. Ohio. That case simply establishes that prisoners generally do not have standing to litigate the constitutional deprivations of others. Mr. Gonzalez is not attempting to litigate the constitutional deprivations of others. He is trying to... But his claim is speculative at this time. Why is it ripe for review where he does not claim that he intends to debrief at any time certain? To get any closer to the debriefing system, he would have to enter it. To enter it, he would subject himself to the risk of death. To ask him to subject himself to the risk of death just to make the claim more ripe... Does his complaint include a claim that he wishes to debrief and that the only reason he does not do so is this fear of retaliation and death? The complaint alleges that he wishes to be free from the shoe. Debriefing is the only way to get out of the shoe. If there were another system, he would prefer to do... That doesn't actually answer my question because he wants to leave, that's clear. But does he claim that he would enter this debriefing process but for his fear of retaliation? I believe if you at least... If you literally construe the complaint as... Where? What part of the complaint? What page? What paragraph? It would be volume two of the excerpts of record, pages 25, 26 and 32 are where he is discussing this debriefing system and suggesting that it is the procedure that he would like to initiate if he could do so without subjecting himself to the risk of death. How do we get around the fact that he has denied that he's a member of a gang and he's consistently taken that position? With all due respect, it's irrelevant, his denial, because he has, as a matter of fact, been adjudicated as a gang member. As an adjudicated gang member, he is eligible to debrief. The government and the trial court take the position that if he cannot successfully debrief, then he must lack standing. However, there is nothing in the record to support that assertion. As soon as he initiates that debriefing system, he is subjected to the risk of death. Accordingly, as an adjudicated gang member, he has standing. The government is trying to have it both ways. He's a gang member inasmuch as they're going to leave him in the SHU, but he's not a gang member if it means he has no standing. Well, perhaps your client is trying to have it both ways also. Respectfully, I think our client is not challenging his incarceration in the SHU at this time. He's making 1983 challenges to constitutional deprivations. It doesn't really make any difference whether he's a member of the gang or not a member of the gang. If he enters debriefing and tells them, I can't tell you anything, he's going to be considered to be a snitch by the gang. Exactly, Your Honor. And his claim is that's going to threaten my life. Exactly. And if I may move on to the second issue. The district court improperly refused Mr. Gonzalez's leave to amend his complaint on a technicality. Mr. Gonzalez wanted to add an Eighth Amendment claim challenging the conditions of the SHU. The government concedes that he can challenge those conditions. They just want him to file a new lawsuit. The government apparently concedes that Madrid v. Gomez is no bar to Mr. Gonzalez's new claim. The government argues that the trial court properly gave the conditional language in Mr. Gonzalez's motion to amend effect. And the government argues that Rule 20 is a barrier to joining the claim. Counsel, if we were to disagree with your position on claim preclusion, wouldn't the amendment that is proposed be futile? It would not be futile, Your Honor. Why? Because Mr. Gonzalez has the right and ability to allege that there's an Eighth Amendment violation in the conditions of the SHU. And even if there were nothing else, he would still have this viable claim that he could amend. Under Foman v. Davis, amendments are liberally granted, and they are usually granted to salvage otherwise unattainable complaints. Well, couldn't that be brought as a separate lawsuit? It's really on a different topic. And isn't, I mean, where's the prejudice to you? And if there were no other claims left to survive, that might be the best approach. Of course, we believe that all the other claims do survive, especially perhaps the challenge to the debriefing system, given that Mr. Gonzalez has standing. Moreover, it's not clear that this would be harmless error, because Mr. Gonzalez alleges in his motion that he cannot afford another dismissal. Bringing a claim is not easy. Starting from scratch is not easy. And there are potentially statute of limitations issues. We don't know when his claim arose and if it would still be, if he could still bring it. And if I have any time left, I would like to reserve that. You may reserve the remainder of your time. Thank you, counsel. We'll hear from the government. Good morning. And may it please the court, Deputy Attorney General Kenneth Roost for Defendant Appellee, California Department of Corrections and Rehabilitation, the CDCR. Race judicata applies here, because California applies its preclusion law to habeas. Even within California's habeas framework, race judicata applies to bar a successful petition, but solely cannot bar a denied petition, because a plaintiff submits rather than appeals his petition to a higher court for review. It would be nonsensical to apply race judicata only where the plaintiff was successful in litigating his habeas petition, as the plaintiff interpreted Union in his motion to certify. Indeed, California's habeas has largely remade race judicata through the law against successive petitions, as discussed in Ray Clark 5 Cal 4, 750 at 767 through 70. And there is no California precedent holding that race judicata cannot apply to bar a decided habeas petition that's re-raised in the civil context. Race judicata's elements are met here, as they're identical to collateral estoppel's elements, and Gonzalez has conceded that he's barred by collateral estoppel, at least from advancing the question of whether the evidence complied with due process standards here. Further, the district court did not clearly err in finding that Gonzalez had no standing to challenge the debriefing process regarding his Eighth Amendment claim. As the court observed, he alleges he is not a gang member, he does not have gang information, and he cannot debrief. Pardon me, counsel, do you, is it your position that only gang members have gang information? That's actually Gonzalez's allegation, Your Honor, and as he points out, you have to accept his allegations as true at the pleading stages. Isn't his allegation that whether or not he's a gang member, if he goes through debriefing and makes something up, just to go through debriefing and gets out, he'll be a gang member? He'll be categorized as a snitch, and he'll be at risk of his life if he goes back in the general population. Well, he's also alleged that that hypothetical cannot be, because the gang investigators have information to verify facts that an inmate gives during a debriefing. So the idea is that if he goes through debriefing as a non-gang member and makes up some story, the gang, the verifiers will say that's just some story, back you go to SHU, you're not debriefed. Those are precisely his allegations, and in fact, the harm that would arise from that is not gang retaliation, but he pointed out that there would be ramifications for lying to prison officials. Excerpts of record, page 32. So if he weren't a gang member and during debriefing he said, because I'm not a gang member, I actually don't know anything, I can't help you, what would happen according to the complaint? Well, as shown already, this is kind of what he said during the validation process in the first place, and gang investigators found his allegation in light of the evidence showing his active gang association unbelievable. So he'd be back in the SHU again? Correct, Your Honor, for a period of up to six years until, as he points out, there's an inactive status review when the evidence goes stale, at which point prison officials will reevaluate whether the inmate is still actively associating with the gang. I have a question about the motion to amend. Why is that an appropriate denial? Because certainly a prisoner can always contest the conditions of confinement as distinct from the fact or duration of confinement. So why was the district court acting within its discretion here? Because, Your Honor, this was a conditional request to add an extra claim that he said he would not raise if the rest of his complaint were going to be barred by res judicata. And as the district court pointed out, that condition precedent was not met here by the dismissal. Well, the argument today at least seems to be that it's not conditional, that he would like to raise it even if the other claims are not permissible. And is it your position that he can't raise that argument here because he didn't raise it in the district court, or what is your position about that? Well, in part, Your Honor, that is an about face of his procedural request, and the district court was within its discretion by treating his condition precedent as a denial for his conditional request to amend his complaint. And further, as the court observed, he's not prejudiced from re-raising this claim for the first time in any lawsuit. He never even amended his complaint. He just made a conditional request that he might want to amend his complaint with this Eighth Amendment concern about segregation conditions. And moving on to the retaliation claim, there simply is no retaliation claim. Unlike in Cortez v. Cate, a case that the parties have both discussed, where an inmate alleged that he was validated for filing grievances in exercise of his First Amendment rights, Gonzales alleged that he was retaliated against for accepting medical care when allegedly prison officials warned him not to accept medical care. That's an Eighth Amendment concern. Medical care is not a First Amendment free speech. And in fact, he said he raised his Eighth Amendment concern the first time he raised his complaint in the court below before it was dismissed for failing to show a harm. In any event, that is a separate claim, not an issue here in the case before us. And as for the reach of the harm here, which defines California's res judicata, the California Supreme Court has been very clear that under the primary rights theory, the determinative factor is the harm suffered. And one injury gives rise to only one claim for relief. That's a boken determination. And that's why I'm here today. I'm here to talk to you about the harm suffered by being put in S.H.U. and the harm alleged to be suffered by getting out of S.H.U. with the category of being a snitch. Yes, Your Honor. However, the remainder, except for the briefing allegation and the conditions of the shoe being cruel and unusual punishment, those are separate harms. But merely being in harsher conditions, in segregation, that is the underlying harm of every other claim and allegation and theory of relief raised in this case. And the court properly applied res judicata under California's primary rights theory in accordance with this court's own precedent in Brodheim, which determined that California's primary rights theory would apply to Barr denied habeas petition. Counsel, we have a pending motion to certify to the Supreme Court of California. Do you have any comment with respect to that? Well, Your Honor, the parties both agree that the law is clear enough for this court to rule without resorting to the California Supreme Court. That said, it's true that there is no case directly on point from California law, and it would be a determinative issue. So as the plaintiff pointed out, the certification to the Supreme Court would be proper under the California rules of court, but that doesn't mean that it would be the right thing to do or obligatory by any means. This court, in fact, already exercised its discretion in evaluating California's res judicata law, again in Brodheim, and decided the law was clear enough to determine that res judicata would apply, and the court should maintain that holding here. You're satisfied that the California Supreme Court would not disassociate itself from our Brodheim case? I believe so, Your Honor. The California Supreme Court has a vested interest in reducing the splitting of actions and burdening parties, defendants, as well as the courts, with excess litigation, which a counter precedent would incur. And if the court has no further questions, we ask that the court to affirm the judgment and maintain its holding that California res judicata applies to bar relitigation of its denied state habeas petition, and we'll rest on the briefs at this point. Thank you, counsel. No further questions. The appellant side has some reserved time. A few quick points on rebuttal, Your Honor. Again, please introduce yourself so the record will be clear of which of the co-counsel is speaking. My name is Zach Tafoya. First to the standing issue. As you yourself pointed out, Judge Bea, merely entering the debriefing process would likely identify Mr. Gonzalez as a snitch, and thus expose him to an extreme risk of death or retaliation. This in and of itself does pose or give Mr. Gonzalez's standing challenge, the debriefing process, as it effectively is absent the six-year review process, the only way for him to get out of the SHU. And looking to the complaint, the six-year review process can be offset merely by a fellow inmate yelling what was deemed to be code in the very cell block of Mr. Gonzalez. This minor incident that has no actual indication of Mr. Gonzalez's gang association is what can put off the six-year requirement, thus making the debriefing process the only way out. As to the primary rights issues, the government in its opposing brief conceded that the primary right to be free of unconstitutional confinement is entirely separate from the right to be free of unconstitutional conditions of confinement. This was the retaliation that Mr. Gonzalez experienced. It was before this investigation was undertook, and it was thus a condition. I see I'm out of time, and if I may, I'll go with myself. Thank you. Thank you, counsel. We do have this motion to certify. Do you wish to add anything beyond debriefs? No, Your Honor. Very well. Thank you very much. The case just argued will be submitted for decision, and on behalf of the court, I would like to express our appreciation to the Pepperdine University School of Law in its pro bono program, and specifically to commend the dean of that very fine law school who was present in the courtroom today, our former colleague on the Tenth Circuit, Judge Donnell Taha, dean of the law school. You are most welcome here. And we commend you on your commitment to this pro bono effort. Thank you very much.
judges: O'scannlain, Graber, Bea